**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:19-cv-03563-DDD

ELON EDWARD EVERETT,

      Applicant,

v.

RYAN LONG, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 filed by *pro se* Applicant Elon Edward Everett. (Doc. 1.) Mr. Everett challenges the validity of his conviction in Arapahoe County District Court Case No. 05CR3213. Respondents filed an Answer (Doc. 21), and Mr. Everett filed a Reply (Doc. 22). After reviewing the record, including the Application, Answer, Reply, and the state court record, the Court finds and concludes that the Application should be denied and the case dismissed with prejudice.

## BACKGROUND

In 2006, Mr. Everett was convicted by a jury in Arapahoe County District Court Case No. 05CR3213 of two counts of sexual assault. (Doc. 11-5 at 3.) He was designated a sexually violent predator ("SVP") and sentenced to an indeterminate term of ten years to life in the

- 1 -

custody of the Colorado Department of Corrections ("CDOC"). (Doc. 1 at 2-3.)

On November 9, 2006, Mr. Everett filed a notice of appeal in the Colorado Court of Appeals. (Doc. 11-1 at 5.) While the direct appeal was pending, Mr. Everett initiated, on May 10, 2011, a federal habeas corpus action asserting a due process claim challenging a delay in his direct appeal. (*Id*. at 3.) On August 31, 2011, the federal court denied habeas corpus relief, finding that Mr. Everett had not shown that his constitutional rights had been violated. (*Id*. at 16.) On November 10, 2011, the Colorado Court of Appeals affirmed Mr. Everett's judgment and sentence for sexual assault on a physically helpless victim, vacated the judgment and sentence for sexual assault on a victim incapable of appraising the nature of her conduct, vacated the SVP designation, and remanded the case with instructions to the district court to make further findings on whether Mr. Everett was an SVP. (Doc. 11-5 at 3.) The Colorado Supreme Court denied certiorari review on October 29, 2012. (Doc. 11-6.)

Before certiorari was denied on direct appeal, Mr. Everett filed, in October 2012, his first motion for postconviction relief pursuant to Rule 35(b) of the Colorado Rules of Criminal Procedure. (Doc. 11-2 at 13.) On August 21, 2013, the state district court denied the Rule 35(b) motion and re-designated Mr. Everett as an SVP. (*Id*. at 11.) Mr. Everett appealed, and while that appeal was pending, he filed, on June 18, 2014, a second postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure. (*Id*. at 9.) On September 10, 2014, Mr. Everett had his Rule 35(b) appeal dismissed so that the state district court would have jurisdiction to consider his Rule 35(c) motion. (*Id*. at 10.) The district court then denied the Rule 35(c) motion, and the Court of Appeals affirmed. (Doc. 11-9.) On September 30, 2019, the Colorado

Supreme Court denied Mr. Everett's petition for a writ of certiorari. (Doc. 11-10.)

Mr. Everett initiated this action on December 16, 2019. Magistrate Judge Gordon P. Gallagher directed Respondents to file a Pre-Answer Response addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A). Upon review of the Pre-Answer Response (Doc. 11), this Court entered an Order of Dismissal in Part, For Answer, and For State Court Record. (Doc. 15.) In that Order, the Court determined that claims 1(a), 1(c), 7, 12, 13(b)-(g), 13(i)-(j), and 17 were procedurally barred; that Claim 11 was duplicative of Claim 10; that Claim 15 failed to present a federal question; and that Claim 16 was part of Claim 14.

Mr. Everett's remaining twelve claims, renumbered, are as follows:

(1) The district court erred in admitting the victim's rape kit because the kit's evidence property report and envelope had hearsay writings that violated the Confrontation Clause;

(2) The two counts of sexual assault must merge because they were based on one sexual act;

(3) The district court erred in denying Mr. Everett's challenge for cause of potential juror D.G. because she said the charges against Mr. Everett were "some evidence";

(4) The district court violated Mr. Everett's right to a public trial by closing a preliminary hearing to the public during the victim's testimony;

(5) The evidence was insufficient to support the conviction for sexual assault of a physically helpless victim;

(6) A new trial was required because there was no transcript of the hearing held on Mr. Everett's request for

substitute counsel, and the district court erred by denying his request for substitute counsel;

(7) The district court erred by overruling defense counsel's objections to statements in the prosecutor's rebuttal closing argument;

(8) The Colorado Sex Offender Lifetime Supervision Act of 1998 is unconstitutional;

(9) The district court erred by denying Mr. Everett's motion for an abbreviated proportionality review of his sentence;

(10) Trial counsel gave ineffective assistance by failing to investigate the charges and evidence against Mr. Everett;

(11) Trial counsel gave ineffective assistance by failing to challenge improper jury instructions; and

(12) The district court erred by denying Mr. Everett's motion alleging ineffective assistance of trial and appellate counsel.

(Doc. 1 at 5-11.)

## LEGAL STANDARDS

The Court must construe the Application and other papers filed by Mr. Everett liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court, however, is not and cannot be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

## A. Threshold Review Under 28 U.S.C. § 2254

Pursuant to 28 U.S.C. § 2254(d), a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Mr. Everett bears the burden of proof under this statute. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The Court's review under Section 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Id.* at 181 (addressing Section 2254(d)(1)); 28 U.S.C. § 2254(d)(2) (limiting review to "the evidence presented in the State court proceeding"). When conducting its review, the Court must first look to see whether "the last state court to decide [the] prisoner's federal claim explain[ed] its decision on the merits in a reasoned opinion." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). If so, the Court "simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* When the last state court decision on the merits "does not come accompanied with those reasons," the Court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* That presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such

as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

The first question the Court must answer under Section 2254(d)(1) is whether Mr. Everett seeks to apply a rule of law that was clearly established by the Supreme Court at the time the state court adjudicated his claim on the merits. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to Section 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was (a) contrary to or (b) an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the

Supreme Court and nevertheless arrives at a result different from [that] precedent."

*House*, 527 F.3d at 1018 (quoting *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (quoting *Williams*, 529 U.S. at 405)). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405.

"A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts." *House*, 527 F.3d at 1018 (citing *Williams* 529 U.S. at 407-08). The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A decision is objectively unreasonable "only if all fairminded jurists would agree that the state court got it wrong." *Stouffer v. Trammel*, 738 F.3d 1205, 1221 (10th Cir. 2013) (internal quotation marks omitted).

Furthermore,

> Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (cleaned up). In conducting this analysis, the Court "must determine what arguments or

theories supported or . . . could have supported[] the state court's decision," and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. at 102.

Similarly, Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts. Pursuant to Section 2254(e)(1), the Court presumes the state court's factual determinations are correct, and Mr. Everett bears the burden of rebutting that presumption by clear and convincing evidence. The presumption of correctness applies to factual findings of the trial court as well as state appellate courts. *See Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015). And it applies to both explicit and implicit factual findings. *See Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017).

Application of the Section 2254(d) standards means that "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

## B. De Novo Review on the Merits

For any claim that was adjudicated on the merits in state court, if Mr. Everett makes the requisite showing under Section 2254(d)(1) or (d)(2), the Court must then consider the merits of his constitutional claim de novo. *Harmon v. Sharp*, 936 F.3d 1044, 1056-57 (10th

Cir. 2019). If a claim was not adjudicated on the merits in state court, the deferential standards of Section 2254(d) do not apply, and if that claim is not procedurally barred, the Court must likewise conduct a de novo review on the merits. *See id.* at 1057. But even for claims not adjudicated on the merits in state court, Section 2254(e) requires the Court to presume the state court's factual findings are correct. *See id.*

## MERITS OF MR. EVERETT'S REMAINING CLAIMS

### I. Claim 1: Admission of Rape Kit's Evidence Property Report and Envelope

Mr. Everett contends in Claim 1 that the trial court violated his Sixth Amendment Confrontation Clause rights by admitting the victim's rape kit because there was written hearsay on the rape kit's evidence property report and envelope. (Doc. 1 at 5.) In the Reply, Mr. Everett disagrees with the state appellate court's characterization of these documents as business records and argues that the rape kit was testimonial evidence. (Doc. 22 at 2.)

#### A. State Court Proceedings

The Court of Appeals determined that the trial court did not abuse its discretion in admitting the rape kit's evidence property report and rape kit envelope under Rule 803(6) of the Colorado Rules of Evidence. (Doc. 11-5 at 25-30.) The Court of Appeals specifically noted that the state district court admitted only the evidence property report and rape kit envelope, not the contents thereof, under Rule 803(6). (*Id.* at 28-30.) After finding that these documents were properly admitted under Rule 803(6), the Court of Appeals addressed Mr. Everett's Confrontation Clause claim as follows:

> We reject defendant's contention that admission of the
> written hearsay on the evidence property report and rape

kit envelope violated his Confrontation Clause rights. Business records are not testimonial evidence, and therefore do not violate a defendant's confrontation rights, unless they were specifically created for use at trial. Here, as noted, the report and the envelope were not so created.

(Doc. 11-5 at 30 (citations omitted).)

## B. Discussion

The United States Constitution provides criminal defendants the right to confront the witnesses against them. *See* U.S. Const. amend. VI; *Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006). The Sixth Amendment right of confrontation is a fundamental right and is applicable to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). Admission of hearsay evidence implicates the constitutional right of the defendant to confront witnesses against him. *Blecha v. People*, 962 P.2d 931 (Colo. 1998). A challenge to hearsay evidence based on the Confrontation Clause requires a case-by-case analysis. *People v. Oliver*, 745 P.2d 222, 226 (Colo. 1987).

"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). "[A]n out-of-court statement that falls within an exception to a hearsay rule under a state's evidentiary rules must nonetheless be excluded from a defendant's trial if its admission would deprive him of his constitutional right of confrontation." *Dutton v. Evans*, 400 U.S. 74, 80-82 (1970).

In *Crawford v. Washington*, the United States Supreme Court held that the Confrontation Clause bars the introduction into evidence of out-of-court statements that are testimonial in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine

the witness, regardless of whether the statements are deemed reliable. 541 U.S. 36, 68-69 (2004). The Court also held that "[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of proving some fact at trial—they are not testimonial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009).

As stated above, the Court of Appeals determined that Mr. Everett's confrontation rights were not violated because the evidence property report and rape kit envelope were properly admitted as business records under Rule 803(6) and did not constitute testimonial evidence. In reaching this decision, the Court of Appeals first found that a police officer's testimony at trial established that whenever an envelope containing evidence arrived at the police department, a crime scene investigation ("CSI") technician would create an evidence property report documenting the time, date, and case number as part of their normal course of business, regardless of whether the case to which the evidence related was going to trial. (Doc. 11-5 at 26-27.) The officer also testified that a CSI technician would process evidence by packaging the evidence taken from a crime scene and placing the envelope in storage. (*Id.* at 28.)

Pursuant to Section 2254(e)(1), the Court presumes the state court's factual determinations are correct, and Mr. Everett bears the burden of rebutting that presumption by clear and convincing evidence. Mr. Everett argues that these documents were testimonial evidence because the "state court absolutely used the alleged victim's rape kit for specific use at trial," and the victim "collected the evidence herself after speaking with authorities." (Doc. 22 at 2.) This argument does not overcome the presumption of correctness of the police officer's testimony at trial, which established the evidence property report and rape kit envelope

were created by a CSI technician following the police department's normal course of business in processing and storing evidence from a crime scene. (State Court R., 7/20/06 Trial Tr. at 27-28, 59-85.) The Court therefore cannot find the state appellate court's decision that the documents were in fact business records was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

The appellate court's legal determination that the evidence property report and rape kit envelope were not testimonial is, moreover, not contrary to or an unreasonable application of *Crawford* or *Melendez-Diaz*. To be testimonial, a statement must have a "primary purpose" of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). Under this definition, admission of the evidence property report and envelope does not implicate the Confrontation Clause. *See, e.g.*, *United States v. Watson*, 650 F.3d 1084, 1090 n.3 (8th Cir. 2011) (penitentiary records containing booking photographs and fingerprint cards admissible as self-authenticating public records did not implicate Confrontation Clause); *Arellano v. Medina*, No. 12-cv-01693-WYD, 2013 WL 2317351, at *7 (D. Colo. May 28, 2013) (state court determination that penitentiary records containing booking photographs and fingerprint cards did not violate Confrontation Clause was not an unreasonable application of *Crawford* because such records are not testimonial). The Court therefore finds that the state appellate court's rejection of Mr. Everett's Confrontation Clause claim was not contrary to or an unreasonable application of a clearly established rule of federal law as determined by the Supreme Court.

Mr. Everett is not entitled to relief for Claim 1.

## II.    Claim 2: Merger of Sexual Assault Convictions

Mr. Everett contends in Claim 2 that his right to a fair trial was violated because the two sexual assault charges and convictions should have been merged. (Doc. 1 at 6.) In his Reply, he contends that being charged and convicted on two counts of sexual assault based on one sexual act caused the prosecution to usurp the function of the jury. (Doc. 22 at 4-7.) Mr. Everett further argues that the state appellate court's decision to vacate the lesser felony class conviction on direct appeal was not the appropriate remedy. (*Id.*)

### A. State Court Proceedings

The jury found Mr. Everett guilty of (1) sexual assault of a physically helpless victim, and (2) sexual assault of a victim incapable of appraising the nature of her conduct. (Doc. 11-5 at 4.) The jury found him not guilty of kidnapping. (*Id.*) He was sentenced to ten years to life in prison for the first conviction and eight years to life for the second conviction, to run concurrently. (*Id.*) On direct appeal, Mr. Everett argued that the two sexual assault convictions should merge because they were based on one sexual act. (*Id.* at 5.) The Court of Appeals upheld the judgment of conviction and sentence imposed for sexual assault of a physically helpless victim and vacated the judgment of conviction and sentence imposed for sexual assault of a victim incapable of appraising the nature of her conduct. (*Id.* at 6.) The Court of Appeals explained:

> The People concede that defendant was convicted of one act of sexual assault under two different theories . . . .

> When two convictions merge, one must be vacated. *People v. Bielecki*, 964 P.2d 598, 608 (Colo. App. 1998). In deciding which conviction to retain, the court must determine which conviction most fully effectuates the jury's verdicts, considering the length of the sentences imposed and the General Assembly's felony classification of the crimes.

> *People v. Gholston*, 26 P.3d 1, 12 (Colo. App. 2000) (the court must maximize the jury verdict by giving effect to the conviction of the most serious offense); *People v. Ramirez*, 18 P.3d 822, 831 (Colo. App. 2000).
>
> Here, as noted, the district court imposed the longest sentence for sexual assault of a physically helpless victim, which is a higher class of felony than sexual assault of a victim incapable of appraising the nature of her conduct. § 18-3-402(2), (3.5), C.R.S. 2011. Accordingly, we vacate the judgment of conviction and sentence imposed for sexual assault of a victim incapable of appraising the nature of her conduct. We direct the district court on remand to amend the mittimus to delete that conviction and sentence.

(Doc. 11-5 at 5-6.)

## B. Discussion

Because the Colorado Court of Appeals granted relief on this claim on direct appeal by vacating one of Mr. Everett's sexual assault convictions, there is no other relief to which Mr. Everett is entitled, and thus the claim should be dismissed. To the extent Mr. Everett contends that this remedy was inadequate, he does not cite any relevant federal rule of law clearly established by the Supreme Court that supports his argument. Nor does there appear to be any. The appellate court's decision thus was not contrary to or an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See, e.g.*, *Jones v. Ortiz*, No. 03-CV-0671-EWN-PAC, 2006 WL 1050100, at *5 (D. Colo. Apr. 20, 2006) (determining that no Supreme Court precedent supports argument that maximizing jury's verdict violates Sixth and Fourteenth Amendment rights).

Mr. Everett is not entitled to relief for Claim 2.

### III.  Claim 3: Denial of Challenge for Cause

Mr. Everett contends in Claim 3 that the trial court erred in denying his challenge for cause of a potential juror because the juror said that the charges against Mr. Everett were "some evidence." (Doc. 1 at 6.) In his Reply, Mr. Everett argues that this juror was "highly volatile to this case"; expressed "multiple times that he 'must have done something'" during voir dire; and that "her mind was already made up, and she stood by that reasoning, influencing minds." (Doc. 22 at 10.)

#### A. State Court Proceedings

The Court of Appeals provided the following analysis of Mr. Everett's claim:

> During voir dire, D.G. said that she had served on a jury before, in a sexual assault case which was "very disturbing." Because of that, she was "not looking forward to hearing the evidence" in this case. When the prosecutor asked her whether she could put that aside and look at the evidence objectively, she replied, "I would sure try to." The prosecutor asked the prospective jurors whether they had encountered a difficult experience, perhaps at work involving sexual harassment, where they had to make a decision. D.G. said, "Sure. Throughout my life there's been situations like that, and I try and hear the other family members and not just make the decisions myself, and certainly try and ask the questions and then listen."
>
> Later, defense counsel asked the prospective jurors whether the fact that defendant was charged would "enter into" their decision making, even if the court told them that the charge was not evidence. D.G. responded, "When I think about it, there must be . . . some evidence. It doesn't prove guilt or innocence, but there was some evidence of . . . something happening, otherwise [defendant] wouldn't have been arrested." When questioned about this response, she agreed with defense counsel that police officers "get things wrong." Defense counsel then asked her whether she shared the view of another prospective juror that

despite what the judge said, the fact of the charge would make him "think that something must have happened for him to be here." She said, "No. I know the role of the juror would be to listen to all the evidence and then decide, you know, innocent or guilty. But because he was arrested, there was something there."

Defense counsel challenged D.G. for cause. The court denied the challenge, concluding that D.G.'s statements demonstrated that she properly understood the role of a juror. Defense counsel later used a peremptory challenge to excuse D.G.

We perceive no abuse of discretion in the district court's denial of the challenge for cause. The court could reasonably conclude that, considered in context and as a whole, D.G.'s statements showed that she recognized that the People's charging of defendant was not evidence of his guilt and that her role was to determine his guilt or innocence based solely on the evidence presented at trial. *See People v. Wright*, 672 P.2d 518, 520-21 (Colo. 1983) (no abuse of discretion where the potential juror's responses reflected some ambivalence about her service but she agreed to listen to all the evidence and apply the law thereto to reach a verdict); *Phillips*, 219 P.3d at 802; *Shover*, 217 P.3d at 907-08.

(Doc. 11-5 at 7-9.)

## B. Discussion

The Sixth and Fourteenth Amendments guarantee a criminal defendant's right to be tried by an impartial jury. *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988). To be "impartial," a juror must be able to "lay aside his opinion and render a verdict based on the evidence presented in court." *Patton v. Yount*, 467 U.S. 1025, 1036 n.12 (1984) (to demonstrate juror bias, defendant must show that juror had such a fixed opinion that he or she could not judge impartially). Thus, to satisfy constitutional standards, the trial court must empanel jurors who are "impartial," which mandates that each juror must be able to "lay aside his opinion

and render a verdict based on the evidence presented in court." *Id.*; *see also Rosales-Lopez v. United States,* 451 U.S. 182, 188 (1991) (it is trial judge's responsibility to "remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence"). In deciding whether the jury was impartial, the Court must focus on the jurors who ultimately deliberated and decided Mr. Everett's fate. *See Ross*, 487 U.S. at 86.

If a "juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath," he should be dismissed for cause. *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (internal quotation marks omitted); *see also United States v. Scull*, 321 F.3d 1270, 1278 (10th Cir. 2003). Whether a juror's answers to voir dire questions indicate that the juror is excusable for cause is a question of fact to be resolved by the trial court; the habeas court must grant "special deference" to the trial court's resolution. *Patton,* 467 U.S. at 1036 n.12. The Section 2254(e)(1) presumption of correctness therefore applies to the state court's factual determination of a juror's impartiality. *Id.* at 1038.

Mr. Everett's claim fails because the allegedly biased juror was removed by a peremptory challenge after the trial court denied the defense challenge for cause. (State Court R., 7/18/06 Trial Tr. at 351.) Mr. Everett thus cured any constitutional error that may have occurred when the trial court refused to remove the allegedly biased juror for cause. *See Ross*, 487 U.S. at 88.

The Court of Appeals, moreover, determined that the trial court did not abuse its discretion in denying the challenge for cause because considering the entire record of voir dire, "D.G.'s statements showed that she recognized that the People's charging of defendant was not evidence

of his guilt and that her role was to determine his guilt or innocence based solely on the evidence presented at trial." (Doc. 11-5 at 9.) The state court's factual findings are presumed correct and are supported by the state court record. (State Court R., 7/18/06 Trial Tr. at 238-239, 246-247, 292-293, 341-342.) In particular, the potential juror stated "I know the role of the juror would be to listen to all the evidence and then decide, you know, innocent or guilty." (*Id*. at 293.) This Court defers to the state appellate court's determination of juror impartiality unless Mr. Everett rebuts the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Mr. Everett fails to meet this standard.

Accordingly, Mr. Everett's third claim for relief is denied.

## IV. Claim 4: Closure of Preliminary Hearing for Victim's Testimony

Mr. Everett contends in Claim 4 that his right to a fair trial was violated when the court closed a preliminary hearing to the public during testimony by the victim. (Doc. 1 at 6.) In his Reply, Mr. Everett asserts that the preliminary hearing was improperly held in county court, and that the court failed to make sufficient findings to justify the closure under *Waller v. Georgia*, 467 U.S. 39 (1984). (Doc. 22 at 12-14.) He further contends that the "court pampered and persuaded the alleged victim by providing all comforts for her to assert that someone sexually assaulted her two years earlier and treating the defendant like he was already guilty." (*Id*. at 17.)

### A. State Court Proceedings

During pretrial proceedings, the prosecutor asked the district court to close the preliminary hearing to the public for the alleged victim's testimony pursuant to C.R.S. § 16-5-301(2) (addressing state court's

ability to close preliminary hearings in sexual assault cases). (State Court R., 6/6/2006 Trial Tr. at 5.) Defense counsel "object[ed] to the position that [S.R.] is a victim at this point" because "[t]hat's to be decided by the jury," and because Mr. Everett was in jail "[a]nd has no family here or friends." (*Id.* at 6.) The trial court analyzed the issue under C.R.S. § 16-5-301(2) and decided to close the preliminary hearing from the public during S.R.'s testimony to prevent the court process from compounding her emotional trauma, after determining that the testimony concerning the S.R.'s retrieval of "the condom from inside her vagina" was "compelling information" and "a matter of extreme privacy . . . for most people." (*Id.* at 7-10.)

On direct appeal, Mr. Everett argued that the trial court failed to comply with the requirements of *Waller*. (Doc. 11-3 at 21). Mr. Everett argued that the trial court's ruling was in error because the court did not (1) make sufficient findings showing that the interest asserted was an "overriding interest" under *Waller*, or (2) consider reasonable alternatives to closing the hearing to the public for all of S.R.'s testimony. (Doc. 11-3 at 29-34.) The Court of Appeals found that the applicable standard of review was plain error "because defense counsel did not object to the closure for the reason defendant now asserts on appeal." (Doc. 11-5 at 11) (citing *People v. DeWitt*, 275 P.3d 728 (Colo. App. 2011) (reviewing unpreserved claim of constitutional error for plain error)).

"Assuming that the court erred," the Court of Appeals determined that Mr. Everett "does not assert and the record does not suggest that any such error 'so undermine[d] the fundamental fairness of [his later] trial as to cast serious doubt on the reliability of the judgment of conviction.'" (Doc. 11-5 at 14.) In concluding that any error was not plain error, the Court of Appeals cited the following cases: *Gannett Co., Inc. v. De-Pasquale*, 443 U.S. 368, 437 (1979) (Blackmun, J., concurring in part

and dissenting in part) (preliminary hearings "are not critical to the criminal justice system in the way the suppression-of-evidence hearing is and they are not close equivalents of the trial itself in form"); *Davis v. Reynolds*, 890 F.2d 1105, 1111 n.5 (10th Cir. 1989) ("because any resulting retrial will appropriately safeguard [the defendant's] Sixth Amendment right to a public trial, it is difficult to envision any prejudice resulting from the original preliminary hearing which will not be cured by a proper public trial"); *Commonwealth v. Murray*, 502 A.2d 624, 630 (Pa. Super. Ct. 1985) (error in closure of preliminary hearing was harmless where later trial was public); *State v. Webb*, 467 N.W.2d 108, 110 (Wis. 1991) ("We do not decide the question of whether there was error at the preliminary hearing in this case, because we hold that a conviction resulting from a fair and errorless trial in effect cures any error at the preliminary hearing."). (Doc. 11-5 at 14-15.)

**B. Discussion**

It appears, as an initial matter, that this claim is procedurally defaulted. The Court of Appeals stated that:

> We need not address [Mr. Everett's *Waller*] contentions, however, because *assuming* that the court erred, defendant does not assert and the record does not suggest that any such error 'so undermine[d] the fundamental fairness of [his later] trial as to cast serious doubt on the reliability of the judgment of conviction.'

(Doc. 11-5 at 14) (emphasis added) (*citing People v. Samuels,* 228 P.3d 229 (Colo. App. 2009)). Under these circumstances, the claim is procedurally defaulted and need not be addressed on the legal merits in this federal habeas action. *See Douglas v. Workman*, 560 F.3d 1156, 1177-78 (10th Cir. 2009) (when state appellate court denies relief on independent state law ground for what it recognizes or *assumes* to be a federal error,

that is not a decision on the merits of the federal claim, and procedural-bar principles of federal habeas claims apply).

To the extent the Court of Appeals denied relief on plain-error review because it found that the claim lacked merit under federal law, the claim also fails here under the deference standards set forth in Section 2254(d). "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." U.S. Const. amend. VI.

> The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions . . . .

*Waller*, 467 U.S. at 46 (quoting *Gannett*, 443 U.S. at 380).

> [T]here is a strong societal interest in public trials. Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system.

*Gannett*, 443 U.S. at 383.

The right to a public trial, however, is not absolute. *United States v. Addison*, 708 F.3d 1181, 1187 (10th Cir. 2013). In rare circumstances, the right to an open trial may give way to other interests. *Davis*, 890 F.2d at 1109 (citing *Waller*, 467 U.S. at 45). An accused's right under the Sixth Amendment must be carefully balanced against the government's competing interest in protecting vulnerable witnesses from embarrassment and harm. *Id*. The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values, and any closure must be narrowly tailored to

serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered. *Waller*, 467 U.S. at 45.

In *Gannett*, the Supreme Court determined that no constitutional error occurred when the trial court closed suppression-hearing proceedings to the public and the press with the consent of the accused. 443 U.S. at 394. Justice Blackmun wrote separately and opined that hearings to determine probable cause to bind a defendant over for trial are not critical to the criminal justice system in the way that other trial proceedings might be. *See id.* at 437.

Given this Supreme Court precedent, the Colorado appellate court's determination that any trial court error did not "so undermine[] the fundamental fairness of [his later] trial as to cast serious doubt on the reliability of the judgment of conviction" was neither contrary to nor an unreasonable application of clearly established Supreme Court law. Nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Mr. Everett is not entitled to relief for Claim 4.

## V.    Claim 5: Sufficiency of the Evidence

In Claim 5, Mr. Everett contends that the evidence was insufficient to support his conviction for sexual assault of a physically helpless victim because there was no evidence that (1) the victim did not consent before sexual intercourse began; (2) Mr. Everett was aware that she had not consented; and (3) intercourse occurred while she was physically helpless. (Doc. 1 at 6.) In his Reply, Mr. Everett states he did not "know anything" because he was drinking and smoking marijuana, and that the victim was not physically helpless because she was talking and

laughing with him "from the moment they met" and was neither "asleep nor helpless." (Doc. 22 at 23.)

## A. State Court Proceedings

On direct appeal, the Court of Appeals rejected Mr. Everett's claim as follows:

> Here, from the evidence described above, the jury could reasonably infer that (1) S.R. was intoxicated to the point of physical helplessness the night of the assault, and (2) defendant knew that she was physically helpless. Further, S.R. testified that she had not consented to have sexual relations with defendant that night. Defendant contends that this evidence was insufficient as a matter of law because S.R. could not remember what had happened. However, direct evidence is not required. The jury may reasonably infer the elements of a crime from circumstantial evidence. *Phillips*, 219 P.3d at 800. Consequently, we conclude that the evidence was sufficient to support defendant's guilt beyond a reasonable doubt. *See id.*; *see also J.S. v. Chambers*, 226 P.3d 1193, 1198, 1206 (Colo. App. 2009); *Marshall v. State*, 223 S.W.3d 74, 79 (Ark. Ct. App. 2006) (a victim may be physically helpless due to intoxication); *State v. Aiken*, 326 S.E.2d 919, 925-26 (N.C. Ct. App. 1985) (same as *Marshall*); *cf State v. Berrios*, 788 N.W.2d 135, 143 (Minn. Ct. App. 2010) (where the victim was "falling down drunk," vomited, lost consciousness several times, and could not walk without assistance, and the defendant's friend had to help him carry her into the bedroom, there was ample evidence for the jury to conclude that the defendant knew or had reason to know that she had been rendered physically helpless by her alcohol consumption).

(Doc. 11-5 at 16-17.)

## B. Discussion

The standard for evaluating a claim challenging the sufficiency of the evidence is found in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the Supreme Court held that "the relevant question is whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 324 n.16). To the extent an insufficient evidence claim involves an interpretation of state law, the state court's interpretation "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam). "Sufficiency of the evidence is a mixed question of law and fact." *Maynard*, 468 F.3d at 673. The habeas court must apply both Section 2254(d)(1) and (d)(2) and "ask whether the facts are correct and whether the law was properly applied to the facts." *Id.*

"*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman*, 566 U.S. at 651. "First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from the evidence admitted at trial." *Id.* (internal quotation marks omitted). Second, "on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Id.* (internal quotation marks omitted).

Mr. Everett does not identify any materially indistinguishable Supreme Court decision requiring a different result. *See House*, 527 F.3d

at 1018. Thus, the state court's decision does not run afoul of Section 2254(d)(1).

Under Section 2254(e)(1), moreover, the Court presumes the state court's factual determinations are correct, and Mr. Everett bears the burden of rebutting that presumption by clear and convincing evidence. Here, Mr. Everett presents no credible evidence to rebut the presumption. Mr. Everett simply states that he did not "know" anything because he was under the influence of drugs and alcohol, and that he had "no cognizable reason to assume" the victim "was physically helpless, because she was not." (Doc. 22 at 22-23.) But under *Jackson*, Mr. Everett can only succeed on is claim if no rational trier of fact could have found the elements of the crime beyond a reasonable doubt. 443 U.S. at 319. Mr. Everett's conclusory assertions are insufficient to rebut the Section 2254(d)(2) presumption. And the Court's own review of the record confirms the state court's factual findings. Nothing Mr. Everett suggests demonstrates that the state appellate court's resolution of this claim—given the evidence presented at trial, considered by the jury, and weighed in favor of the prosecution—was objectively unreasonable. *See Stouffer*, 738 F.3d at 1221 (decision is objectively unreasonable "only if all fairminded jurists would agree that the state court got it wrong").

Claim 5 therefore does not provide a basis for habeas relief.

## VI.    Claim 6: Substitution of Counsel

In Claim 6, Mr. Everett contends that (a) his due process right to a meaningful appeal was denied because there was no transcript of the hearing in which he requested substitute counsel; and (b) the trial court erred in denying his request for substitute counsel. (Doc. 1 at 7.) In his Reply, Mr. Everett states that "the record shows clearly that from start to finish, there was a complete breakdown in communication with his

attorney." (Doc. 22 at 30.) Mr. Everett asserts that this breakdown in communication was the primary reason for the hearing, during which he articulated "several constitutional reasons of a conflict of interest and ineffective assistance of counsel." (*Id.* at 31.) He further contends that the transcript was "conveniently lost" and that "another hearing was held to 'reconstruct the record,'" but "no one could remember anything" and Mr. Everett was "made to keep appointed counsel." (*Id.* at 31-37.) Mr. Everett argues that this occurred at a critical stage of his criminal proceedings. (*Id.*)

## A. State Court Proceedings

The Court of Appeals was unpersuaded by Mr. Everett's claim and analyzed the issues in two parts as follows:

### 1. Absence of Transcript

A criminal defendant is generally entitled to a record on appeal that includes a complete transcript of the trial proceedings. *People v. Rodriguez*, 914 P.2d 230, 300 (Colo. 1996). But an incomplete trial record entitles the defendant to a new trial only where (1) a substantial and significant portion of the record is absent, and (2) the defendant demonstrates specific prejudice resulting from the state of the record. *Id.* at 300-01; *see People v. Whittiker*, 181 P.3d 264, 269 (Colo. App. 2006). Where the record is sufficiently complete and reliable to enable an intelligent review of the defendant's substantive contentions, a new trial is unnecessary. *Whittiker*, 181 P.3d at 270; *People v. Ellis*, 148 P.3d 205, 208 (Colo. App. 2006) ("A reconstructed record is sufficient for appellate review if it contains enough information to make the defendant's argument ascertainable.").

Here, after filing the notice of appeal, defense counsel moved to remand the case to the district court to reconstruct the record of the hearing on defendant's request for substitute counsel. On remand, after reviewing the record and affidavits from the trial judge and counsel stating that they could not recollect the specific statements made in the

hearing, defense counsel moved for the district court to enter an order finding that the record of the hearing could not be reconstructed. The court did so.

Nonetheless, there is substantial evidence in the record concerning defendant's grounds for requesting substitute counsel. Before the hearing at issue, defendant wrote two letters to the court asserting that defense counsel had (1) told him that she could not attend and would not be prepared for the preliminary hearing if it was held on the then-scheduled date, which had been set to comply with defendant's right to have the hearing within thirty days, *see* Crim. P. 5(a)(4)(I); and (2) provided ineffective assistance by "deliberately prevent[ing] [him] from scrutinizing all discovery in [an] effort to meaningfully assist in his defense." Consequently, defendant claimed that counsel had "voluntarily dismissed herself from my case," thereby creating a conflict of interest, and requested substitute counsel.

Defendant reasserted these complaints at a hearing on the People's motion to continue the preliminary hearing (which the court granted). He told the court that he could not "continue with this counsel here" because she had asked him to waive his right to a preliminary hearing within thirty days, she had not reviewed the discovery with him as promised, she had voluntarily withdrawn from his case, and communication had broken down. (Defendant's opening brief confirms these were his only contentions in the district court.) Counsel denied having moved to withdraw from the case.

The court noted that the current hearing was only for the continuance request, and set another hearing—the hearing for which there is no transcript—to discuss the alleged conflict. After that hearing, the court denied defendant's request for substitute counsel, finding that defendant had failed to establish a conflict of interest. The prosecutor later said that his file notes reflected that defendant had sought new counsel at the hearing "without any specification of legal or factual basis."

We conclude that the record is sufficiently complete and reliable to enable us to intelligently review defendant's contention that the court erred by denying his request for substitute counsel. *See Whittiker*, 181 P.3d at 270; *Ellis*, 148

P.3d at 208; *see also People v. Jackson*, 98 P.3d 940, 943 (Colo. App. 2004) (the record was sufficient for appellate review despite an incomplete transcript).

Consequently, we reject defendant's contention that a new trial is required because the record of the hearing cannot be reconstructed.

## 2. Denial of Request for Substitute Counsel

We review the district court's decision to deny an indigent defendant's request for substitute counsel for an abuse of discretion. *People v. Thornton*, 251 P.3d 1147, 1151 (Colo. App. 2010). We will not overturn the decision unless it is manifestly arbitrary, unreasonable, or unfair. *People v. Buckner*, 228 P.3d 245, 248 (Colo. App. 2009).

An indigent defendant is entitled to new counsel only when he demonstrates good cause requiring substitute counsel. *Thornton,* 251 P.3d at 1151; *People v. Jenkins*, 83 P.3d 1122, 1125-26 (Colo. App. 2003). As relevant here, good cause exists where there is a conflict of interest or a complete breakdown of communication. *Thornton*, 251 P.3d at 1151. A conflict of interest exists where "(1) an attorney's representation of one client is directly adverse to another client, [or] (2) . . . the attorney's ability to represent a client is materially limited by the attorney's responsibility to another client or to a third person, or by the attorney's own interests." *People v. Kelling*, 151 P.3d 650, 656-57 (Colo. App. 2006) (quoting *People v. Edebohls*, 944 P.2d 552, 556 (Colo. App. 1996)).

Defendant alleged that there was a conflict of interest because defense counsel had (1) encouraged defendant to waive his right to a preliminary hearing within the mandated period, (2) voluntarily withdrawn from his case, and (3) failed to provide effective assistance by reviewing discovery materials and information with him. The first allegation does not create a conflict of interest. *See Kelling*, 151 P.3d at 656-57. The second was refuted by defense counsel. And, to the extent defendant's allegation of ineffective assistance suggests a potential conflict of interest, we are not persuaded that a defendant can create a disqualifying conflict merely by alleging ineffective representation. Moreover, we note that nothing in the record indicates that

defense counsel's later representation of defendant was inhibited by defendant's claim of ineffective assistance of counsel. *See id.* at 657 (though the defendant's letter to the court alleging ineffective assistance of counsel created a potential conflict of interest because defense counsel "could not be expected to litigate his own ineffectiveness," substitute counsel was not required because defense counsel was "wholly unconcerned . . . with defending his earlier acts or omissions" while representing the defendant).

Regarding the alleged breakdown in communication, at a hearing about a month before trial, defense counsel stated in defendant's presence that he "has been assisting in his own defense through a lot of written notes to me." This statement indicates that there was not a complete breakdown of communication between her and defendant. *See Thornton*, 251 P.3d at 1151.

Therefore, we conclude that the district court did not abuse its discretion by denying defendant's request for substitute counsel.

(Doc. 11-5 at 18-24.)

## B. Discussion

The Supreme Court has held that an indigent criminal appellant is entitled to a "record of sufficient completeness to permit proper consideration of their claims." *Draper v. Washington*, 372 U.S. 487, 499 (1963). In *Mayer v. City of Chicago*, 404 U.S. 189, 194 (1971), the Court clarified that "[a] record of sufficient completeness does not translate automatically into a complete verbatim transcript." *See also Fahy v. Horn,* 516 F.3d 169, 190 (3d Cir. 2008) (noting that "neither the Supreme Court, nor our Court, has held that due process requires a verbatim transcript of the entire proceedings or that an incomplete record confers automatic entitlement to relief").

Here, the Court of Appeals concluded that the record was adequate, and Mr. Everett has not provided this Court with any evidence that his

direct appeal was prejudiced in the absence of a complete record of the original hearing. Instead, Mr. Everett speculates that the lack of an accurate record seriously hindered the appeal of his claim. A similar claim was rejected by a Tenth Circuit panel in *Harden v. Maxwell*, 229 F.3d 1163, 2000 WL 1208320 (10th Cir. 2000) (unpublished table decision). Citing *Draper*, the panel explained that "mere speculation as to possible error is insufficient to raise any indication of prejudice, particularly given the fact that prisoners do not have a constitutional right to a complete copy of the trial record on appeal." *Id.* at *2.

And a review of the state court record reveals that nothing in the transcript contradicts the state court's factual findings. If anything, the state court record provides further support for the state court's findings that "there is substantial evidence in the record concerning [Mr. Everett's] grounds for requesting substitute counsel," including two letters submitted to the court, Mr. Everett's assertions during a "motion to continue the preliminary hearing," and the prosecutor's file notes. (State Court R., 12/22/05 Trial Tr. at 5-10 and 05CR3213 State Court File at 502-29.) Mr. Everett has failed to establish that the missing transcript of the original hearing had any impact on the appellate court's resolution of the substitute counsel claim presented on direct appeal.

In short, the state appellate court's determination of the claim concerning the absence of the transcript is not contrary to established federal law. Nor does the decision unreasonably apply clearly established federal law to the facts of the case presented at trial.

Regarding Mr. Everett's claim that the state court wrongfully denied his request for substitute counsel, the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his

defence." The right to counsel includes not only the right to retain counsel, but also the right of an indigent defendant to have counsel appointed for him at state expense. *Gideon v. Wainwright*, 372 U.S. 335 (1963).

With respect to substitute counsel, a criminal defendant has a constitutional right to representation by counsel that is free from conflicts of interest. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). An "'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002). "To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir. 1987) (internal quotation marks omitted). A mere strategic disagreement between a defendant and his attorney does not amount to a complete breakdown of communication or an irreconcilable conflict; rather, there is good cause for substitution of counsel only if a conflict between the defendant and his attorney is "so great that it . . . resulted in total lack of communication preventing an adequate defense." *United States v. John Doe No. 1*, 272 F.3d 116, 124 (10th Cir. 2001). A total lack of communication exists where the defendant and counsel could not, "in any manner," communicate. *United States v. Holloway*, 939 F.3d 1088, 1099 (10th Cir. 2019). The Tenth Circuit has concluded "there was not a lack of communication precluding an adequate defense" in a case where the defendant made at least one call to counsel and counsel sent him letters asking for comments or corrections to the presentence report. *United States v. Lott*, 433 F.3d 718, 721-25 (10th Cir. 2006).

Mr. Everett does not challenge the state court's recitation of the relevant facts describing his dissatisfaction with counsel and the alleged conflict-of-interest issues that led to his request for substitution of

counsel. The Court thus presumes those facts are correct. Mr. Everett fails to demonstrate that the state court's determination regarding the absence of an actual conflict of interest with counsel was an unreasonable determination of the facts in light of the evidence presented.

Mr. Everett disagrees with the appellate court's factual determination that there was not a complete breakdown in communication between him and his attorney. But his vague and conclusory allegation that "he didn't get contact nor communicate with his counsel 'in any matter' until trial" is not supported by anything in the record. And in any event, the Court's review of the state court record confirms there was not a complete breakdown in communication, but rather that Mr. Everett merely disagreed with the way in which appointed counsel was handling his case. Mr. Everett fails to demonstrate that the state court's determination regarding the absence of a complete breakdown of communication with his counsel was an unreasonable determination of the facts in light of the evidence presented.

Because there was no actual conflict of interest or complete breakdown of communication, the state court's determination that Mr. Everett's Sixth Amendment rights were not violated is not contrary to or an unreasonable application of clearly established Supreme Court law. Mr. Everett fails to identify any clearly established Supreme Court law that provides an indigent criminal defendant with a constitutional right to substitute counsel in the absence of an actual conflict of interest. *See Plumlee v. Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008) ("Plumlee has cited no Supreme Court case—and we are not aware of any—that stands for the proposition that the Sixth Amendment is violated when a defendant is represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust."). And as noted above, a disagreement with counsel about trial

strategy does not require substitution of counsel in the absence of a total lack of communication that prevents an adequate defense. *See Lott*, 433 F.3d at 721-25.

Mr. Everett is not entitled to relief for Claim 6.

## VII. Claim 7: Prosecutorial Misconduct

In Claim 7, Mr. Everett contends that the prosecution committed misconduct during its rebuttal closing argument. (Doc. 1 at 7.) According to Mr. Everett, the prosecution made "unfounded and inflammatory comments concerning social reaction to sexual assault victims" and suggested that Mr. Everett "was physically dangerous." (*Id.*; Doc. 22 at 39.)

### A. State Court Proceedings

The Court of Appeals provided the following explanation for rejecting Mr. Everett's prosecutorial misconduct argument:

> Here, defense counsel argued in closing that S.R.'s behavior after the assault was "not consistent with an individual who's just been raped and kidnapped." She pointed out that when S.R. awoke with defendant and realized that she had been sexually assaulted, she did not run out of the house or call the police. Further, she did not call the police for two more days.
>
> In rebuttal, the prosecutor explained S.R.'s post-assault actions as follows:
>
> > One minute [S.R.'s] sipping a glass of water in a nightclub. . . . The next thing she remembers is being in bed half naked, practically naked, with a man she's never met . . . . Of course she's going to sit there and search her soul and say: What happened? Why did I get here? How did I get here? Who did this to me? What did they do to me? And, of course, that thought is going to go through her mind at some point, especially in a society . . . . that still

blames a victim that she might sit back and try to blame herself.

. . . .

[H]ere's somebody that, one second they wake up, the last thing they remember, they were in a night-club, they have this kind of vague fragment of a memory of falling down in an alleyway, and here they are, they're groggy, they're disoriented; they don't know who this person is they're with. . . . And they might also be thinking: I don't want to antago-nize this person, either. I don't know who they are. I don't know what they're capable of.

We first note that, contrary to defendant's suggestion, the comment about not wanting to antagonize defendant did not suggest that he was a physically dangerous or threatening person, but rather that S.R. had not known whether he was. Moreover, both comments expressed permissible inferences as to S.R.'s credibility and responded to defense counsel's argument concerning S.R.'s post-assault behavior. *See Gladney*, 250 P.3d at 769; *Walters,* 148 P.3d at 335-36 (the prosecutor's telling the jury to imagine a fourteen-year-old girl's response to being confronted by defendant was permissible commentary on the victim's and the defendant's credibility); *see also State v. Esher*, 2003 WL 22005897, *5 (Kan. Ct. App. No. 88,343, Aug. 22, 2003) (unpublished disposition) (the prosecutor's statement, "[as] [a] society, we've learned not to blame the victim," was not prosecutorial misconduct even though there were no facts to support the statement because it was a response to the defendant's arguments that the sexual acts had been con-sensual); *cf People v. Davis*, — P.3d —, 2011 WL 2474290, *3 (Colo. App. No. 06CA1760, June 23, 2011) (the prosecu-tor's detailed comments in closing argument based on so-cial science research concerning rape trauma syndrome were improper).

Consequently, we conclude the district court did not abuse its discretion by permitting these comments.

(Doc. 11-5 at 30-40.)

## B. Discussion

The clearly established federal law relevant to a constitutional claim challenging a prosecutor's allegedly improper comments is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *See Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam). In *Darden*, the Supreme Court explained that a prosecutor's improper comments violate the Constitution only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To determine whether prosecutorial misconduct rendered the trial fundamentally unfair, the Court must consider "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial." *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998). "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker*, 567 U.S. at 48 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Consistent with *Darden*, the Court of Appeals considered the totality of the circumstances and whether the alleged misconduct undermined the fundamental fairness of Mr. Everett's trial. Mr. Everett makes no argument regarding his prosecutorial misconduct claim under Section 2254(d)(1) or Section 2254(d)(2). That is, he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018. He also does not contend the state court decision was based on an unreasonable determination of the facts in light of the evidence presented.

The Court of Appeals determined that the prosecutor's statements in its rebuttal closing argument were not improper—the prosecutor's comments expressed permissible inferences as to the victim's credibility and were responsive to defense counsel's comments concerning the victim's post-assault behavior. For example, in closing, defense counsel remarked that the victim's behavior after the assault was "not consistent with an individual who's just been raped and kidnapped" because she did not run out of the house, and she waited three days to report the incident to the police. (State Court R., Trial Tr. 7/21/06 at 26-28, 44.) In response to these comments, the prosecutor stated in rebuttal that when the victim woke up in bed "practically naked with a man she's never met," she was likely confused and trying to figure out what had happened and perhaps thought, "I don't want to antagonize this person, either. I don't know who they are. I don't know what they're capable of." (*Id.* at 58-59.)

When a prosecutor responds to comments made by defense counsel, the response is evaluated in light of the defense argument that preceded it. *See Darden,* 477 U.S. at 179. The Court agrees with the Court of Appeals that, in this context, the prosecutor's comments were not improper and did not rise to the level of a due process violation. In short, the Court cannot find that the prosecutor's reference to the victim's uncertainty as to whether Mr. Everett was physical dangerous or possibly threatening was so inflammatory that it rendered the entire proceedings fundamentally unfair.

Mr. Everett is not entitled to habeas relief for Claim 7.

## VIII. Claim 8: Constitutionality of the Colorado Sex Offender Lifetime Supervision Act of 1998

Mr. Everett contends in Claim 8 that the Colorado Sex Offender Lifetime Supervision Act of 1998 ("SOLSA") is unconstitutional. In his Reply, he contends that SOLSA was not intended "to be a life-sentence" unless the offender "refused to participate in sex-offender treatment." (Doc. 22 at 40-41.) He argues that the system is flawed because the "average inmate does 10 years on his class 3 or 4 felony before he or she is even offered treatment" instead of serving his or her "bottom tier term" and being "released to do treatment on the outside." (*Id.* at 41-45.) Mr. Everett further contends that SOLSA does not have the necessary enacting clause. (*Id.* at 46-51.)

### A. State Court Proceedings

On direct appeal, the Court of Appeals rejected Mr. Everett's constitutional arguments against SOLSA as follows:

> Defendant contends that the Colorado Sex Offender Lifetime Supervision Act of 1998 (SOLSA) is unconstitutional for reasons already addressed and rejected by divisions of this court in *People v. Firth*, 205 P.3d 445 (Colo. App. 2008); *People v. Lehmkuhl*, 117 P.3d 98 (Colo. App. 2004); *People v. Dash*, 104 P.3d 286 (Cob. App. 2004); *People v. Oglethorpe*, 87 P.3d 129 (Colo. App. 2003); and *People v. Strean*, 74 P.3d 387 (Colo. App. 2002). Because defendant offers no new argument as to why these cases were wrongly decided, we decline to depart from those decisions.[10]
>
> ──────────
>
> [10] We reject defendant's suggestion that his constitutional arguments are different from those addressed in *Firth, Lehmkuhl, Dash, Oglethorpe*, and *Strean*.

(Doc. 11-5 at 40.)

## B. Discussion

Mr. Everett fails to demonstrate that the state court's rejection of his constitutional claims challenging SOLSA is either contrary to or an unreasonable application of clearly established federal law. Mr. Everett does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018. And having considered the arguments and analyses set forth in *Oglethorpe* and *Strean*, the state court cases on which the Colorado Court of Appeals relied, and this Court is convinced that the state court's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Indeed, courts uniformly have rejected constitutional challenges to SOLSA as a general matter, as well as the parole process it prescribes. *See Diaz v. Lampela*, 601 F. App'x 670, 677 (10th Cir. 2015) ("due process is not implicated in the denial of parole under SOLSA"); *Firth v. Shoemaker*, 496 F. App'x 778, 792 (10th Cir. 2012) (rejecting "arguments in favor of a non-discretionary right to a favorable parole recommendation" under SOLSA); *Jago v. Ortiz*, 245 F. App'x 794, 797 (10th Cir. 2007) ("Because [SOLSA] gives the board total discretion in granting parole—unlike the statutory mandates for early release in *Greenholtz* and *Allen*—[applicant] has no federally protected liberty interest."); *see also, e.g.*, *People v. Sabell*, 452 P.3d 91, 100 (Colo. App. 2018) ("numerous divisions of this court have considered the constitutionality of SOLSA and have rejected all such challenges") (citing *People v. Collins*, 250 P.3d 668, 679 (Colo. App. 2010); *Firth*, 205 P.3d at 452; *Lehmkuhl*, 117 P.3d at 108; *Dash*, 104 P.3d at 290; *Oglethorpe*, 87 P.3d at 133; *Strean*, 74 P.3d at 393).

Mr. Everett has not demonstrated that he is entitled to relief on Claim 8.

## IX. Claim 9: Proportionality Review of Indeterminate Sentence

Mr. Everett contends in Claim 9 that the trial court erred in denying his motion for an abbreviated proportionality review of his sentence. He challenges his indeterminate sentence of ten years to life under SOLSA as grossly disproportionate to his crime by arguing that a "SOLSA sentence is not mandatory." (Doc. 22 at 53.) He further contends that the term "supervision" is undefined and unconstitutional, and that "not giving a proportionality review is contrary and unreasonable according to Supreme Court law." (*Id.*)

### A. State Court Proceedings

In conducting its own abbreviated proportionality review, the Court of Appeals determined Mr. Everett's claim was without merit:

> Here, defendant moved for a proportionality review "given the cruel and unusual consequences of applying the [SO]LSA to [him] in light of the nature of the allegation." At the sentencing hearing, the district court said it was "not going to find that it's disproportional to sentence [defendant] under the [SOLSA]."
>
> Assuming without deciding that this finding was insufficient to constitute an abbreviated proportionality review, no remand is necessary because we may conduct our own abbreviated proportionality review. *See People v. Deroulet*, 48 P.3d 520, 524 (Colo. 2002); *Loyas,* 259 P.3d at 513.
>
> Sexual assault is considered a grave and serious crime. *See Dash*, 104 P.3d at 293 ("sex offenses are considered particularly heinous crimes"); *see also Mershon*, 874 P.2d at 1034. Section 18-1.3-1004(1)(a), C.R.S. 2011, of SOLSA requires the district court to sentence a defendant who sexually assaults a physically helpless victim to an

indeterminate term with a minimum of four years imprisonment and a maximum of the offender's life. §§ 18-1.3-401(1)(a)(V)(A), 18-1.3-1004(1)(a), 18-3-402(2), (3.5), C.R.S. 2011. This indeterminate life sentence "does not in and of itself amount to cruel and unusual punishment." *Dash*, 104 P.3d at 293 (rejecting the defendant's argument that his sentence was grossly disproportionate because the only other crimes for which a life sentence may be imposed are more serious than crimes covered by SOLSA).

Consequently, we conclude that defendant's indeterminate sentence of ten years to life was not grossly disproportionate to his crime. *See Close*, 48 P.3d at 538; *Thomeczek*, — P.3d at —, 2011 WL 3618111, *5; *Dash*, 104 P.3d at 293.

(Doc. 11-5 at 42-43.)

## B. Discussion

"The Eighth Amendment contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring in part and concurring in the judgment)). A sentence violates the Eighth Amendment if it is "grossly disproportionate to the severity of the crime." *Ewing*, 538 U.S. at 21. "[O]ne governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) "[T]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Id.* at 77.

Supreme Court case law has not been a model of clarity in applying the gross proportionality principle. *See Harmelin*, 501 U.S. at 998 (1991) (Kennedy, J., concurring in part and concurring in the judgment). And indeed, gross proportionality cases are inherently fact-specific. *See, e.g.*, *Rummel v. Estelle*, 445 U.S. 263, 265-66, 275-76 (1980) (concluding that

sentence of life imprisonment with possibility of parole imposed under state recidivist statute did not violate Eighth Amendment, where defendant had two previous felony convictions—one for "fraudulent use of a credit card to obtain $80 in goods or services," and another for "passing a forged check in the amount of $28.36"—and was then convicted of felony theft for "obtaining $120.75 by false pretenses"); *Hutto v. Davis*, 454 U.S. 370 (1982) (upholding against proportionality attack a sentence of 40 years' imprisonment for possession with intent to distribute nine ounces of marijuana); *Harmelin*, 501 U.S. at 994 (plurality opinion holding that sentence of life imprisonment without parole for first-time offender's possession of 672 grams of cocaine did not violate Eighth Amendment); *Ewing,* 538 U.S. at 30-31 (upholding against proportionality attack a twenty-five-year-to-life sentence imposed under California recidivist statute for felony grand theft of stealing three golf clubs worth approximately $1,200); *Lockyer*, 538 U.S. at 77 (upholding on federal habeas review state appellate court's determination that two consecutive twenty-five-year-to-life sentences imposed under state recidivist statute for two counts of petty theft did not violate clearly established Supreme Court Eighth Amendment jurisprudence).

The Supreme Court has only twice invalidated a sentence under the Eighth Amendment. *See Weems v. United States*, 217 U.S. 349 (1910) (defendant sentenced to fifteen years in chains and hard labor for falsifying a public document); *Solem v. Helm*, 463 U.S. 277 (1983) (defendant sentenced to life without parole after committing six nonviolent felonies including writing a bad $100-dollar check).

In *Solem*, the Supreme Court instructed the lower courts to consider the following factors in analyzing proportionality claims under the Eighth Amendment: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same

jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." 463 U.S. at 292.

The Supreme Court revisited the proportionality issue in *Harmelin*. In a fractured opinion, Justice Kennedy, joined by Justices O'Connor and Souter, wrote separately to argue for the existence of a narrow proportionality guarantee. 501 U.S. at 996 (Kennedy, J., concurring in part and concurring in the judgment). In reviewing the three-part test articulated in *Solem*, Justice Kennedy stated:

> *Solem* is best understood as holding that comparative analysis within and between jurisdictions is not always relevant to proportionality review . . . . A better reading of our cases leads to the conclusion that intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality . . . . The proper role for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime.

*Id*. at 1004-05.

The Tenth Circuit has determined that "Justice Kennedy's opinion in *Harmelin* narrows *Solem* and sets forth the applicable Eighth Amendment proportionality test." *Hawkins v. Hargett*, 200 F.3d 1279, 1282 (10th Cir. 1999). And, the imprecise "contours" of the gross-disproportionality principle gives state courts, such as the Colorado Court of Appeals, more "leeway" due to the general nature of the rule. *Richter*, 131 S. Ct. at 786. On federal habeas review, the Court is mindful that the Supreme Court decisions on proportionality "recognize that [the Court] lack[s] clear objective standards to distinguish between sentences for different terms of years." *Harmelin*, 501 U.S. at 1001.

Here, the Court of Appeals conducted an abbreviated proportionality review and addressed the gravity of Mr. Everett's offense and the harshness of the penalty imposed, which are factors relevant to the gross proportionality determination under Supreme Court case law. *See Ewing*, 538 U.S. at 22 (directing courts to review gravity of offense to determine if it matches severity of punishment); *Solem*, 463 U.S. at 291-92; *Harmelin*, 501 U.S. at 1002-04 (Kenney, J., concurring in part and concurring in the judgment) (comparing gravity of petitioner's offense to sentence of life imprisonment without parole). The state court's determination that the offense of sexual assault is a grave and serious crime under Colorado law is not subject to challenge in this federal habeas proceeding. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The state appellate court made a reasonable determination based on factual findings, which are presumed correct in this federal habeas proceeding and are supported by the state court record. Mr. Everett does not point to any clear and convincing evidence to the contrary.

In addition, Mr. Everett's sentence was within the permissible statutory range for the offense he committed. This Court is reluctant to interfere with the legislative determination of an appropriate sentence range. *See Rummel*, 445 U.S. at 275-76 (concluding that length of prison sentences for serious felonies is "properly within the province of legislatures, not courts"); *Harmelin*, 501 U.S. at 998 (same, citing *Rummel*). Mr. Everett's sentence, furthermore, provides an opportunity for parole after a minimum sentence is served. *See Rummel*, 445 U.S. at 280-81 (finding it significant that defendant had possibility of parole, and concluding that possibility of parole, however unlikely, distinguished defendant from someone serving a life without parole).

Heeding the Supreme Court's admonition that a constitutional violation based on the gross proportionality principle is reserved for "only the extraordinary case," *Lockyer*, 538 U.S. at 77, the Court cannot find that the state appellate court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter,* 131 S. Ct. at 786-87. The state appellate court's decision was therefore not contrary to or an unreasonable application of Supreme Court law.

Mr. Everett cannot prevail on Claim 9.

## X.    Claims 10 and 11: Ineffective Assistance of Counsel

In Claim10, Mr. Everett contends that his Sixth Amendment right to effective assistance of counsel was violated because trial counsel failed to investigate the charges and evidence against Mr. Everett, including investigating Mr. Everett's father as "the only eye-witness." (Doc. 22 at 54; *see also* Doc. 1 at 9.) Mr. Everett contends that counsel "couldn't remember speaking to the father," and his father would have testified that the victim "was awake and aware, laughing with the Defendant when he opened the door and entered the room" and that "she even spoke to Mr. Everett's father and said 'Hi.'" (Doc. 22 at 54-58.) In Claim 11, Mr. Everett also asserts that trial counsel was ineffective by failing to challenge the jury instructions, which did not specifically explain that Mr. Everett was being charged with a single sexual assault under alternative theories and could not be convicted of both counts. (Doc. 1 at 9; Doc. 22 at 58-60.)

### A. *Strickland* Standard

Clearly established federal law provides that a defendant in a criminal case has a Sixth Amendment right to the effective assistance of

counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). To establish counsel was ineffective, Mr. Everett must demonstrate both that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance resulted in prejudice to his defense. *See id*. at 687. If Mr. Everett fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See id*. at 697.

In general, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id*. It is Mr. Everett's burden to overcome this presumption by showing that counsel's alleged errors were not sound strategy under the circumstances. *See id.*

In the context of federal habeas corpus review under Section 2254(d), a state prisoner "faces an even greater challenge." *Harmon v. Sharp*, 936 F.3d 1044, 1058 (10th Cir. 2019). "When assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [federal courts] defer to the state court's determination that counsel's performance was not deficient and, further, to the attorney's decision in how to best represent a client." *Id*. (cleaned up). Review under Section 2254(d) is thus doubly deferential. *See id.*

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether any reasonable argument exists that counsel satisfied *Strickland*'s deferential standard. And because the *Strickland* standard is a general standard, a state court has . . . more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id*. (citations and internal quotation marks omitted).

Under the prejudice prong, Mr. Everett must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."). In determining whether Mr. Everett has established prejudice, the Court must look at the totality of the evidence and not just the evidence that is helpful to Mr. Everett. *See Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

## B. Claim 10

### 1. State Court Proceedings

As to Mr. Everett's claim regarding counsel's failure to investigate and call his father as a witness, the Court of Appeals rejected the claim as follows:

> Defendant contends that he established by a preponderance of the evidence that trial counsel rendered ineffective assistance when they failed to investigate and call his father as an eyewitness. As support, he argues that the record does not contain a written report memorializing defense counsel's investigator's attempts to contact defendant's father and that, due to the passage of time, primary trial counsel could not remember why she decided not to call the father as a witness.

> The record supports the district court's determination that defendant's father was investigated. Specifically, it showed:

> · At the evidentiary hearing, primary trial counsel and her investigator both testified, and a written memorandum reflected, that counsel asked the investigator to interview defendant's father.

- The investigator testified that he was "100% sure [he] tried to contact all the witnesses [trial counsel] asked [him] to contact."

- Although the investigator did not have a record of his interview with defendant's father, he testified that it was his practice to inform defense counsel of the results of his investigations and that portions of the file in this case may have gone missing when the public defender's office moved.

- Defendant's father was available and present throughout defendant's trial, and defendant's counsel spoke with the father.

Likewise, the following evidence supports the district court's conclusion that trial counsel's decision not to call defendant's father as a witness was based on a reasonable trial strategy:

- Primary trial counsel testified that she would have based her decision regarding which witnesses to call on multiple considerations, including the content of the potential testimony, whether it would be helpful and credible to the jury, and whether the witness had any criminal history.

- The district court found trial counsel's testimony regarding her considerations "more credible than [d]efendant's testimony that [trial counsel] made this decision based solely on [d]efendant's family relationship with his father." *See id*. at 1065 n.10 (noting that the district court is entitled "to assess the credibility and weight of the evidence").

- Although defendant's father is deceased and, thus, could not testify as to what he observed on the night of the incident, defendant testified that the room was dimly lit when his father walked in and that he and the victim pulled up the covers and stopped what they were doing when his father entered the room.

- Defendant testified that he and the victim were laughing and drunk when they entered his parents' house, and trial counsel testified that, if defendant's father observed that the victim was drunk, "[t]hat would be hurtful to the case."

- Trial counsel also testified that she would have looked into defendant's father's criminal history and "definitely" would have considered that he had previously been convicted of aggravated robbery. She further testified that the fact defendant's father had at least three felony convictions "very well could have been the reason [she] elected not to call him."

Based on this evidence, we discern no error in the district court's conclusion that trial counsel investigated defendant's father and made an informed decision not to call him as a witness at trial. *See People v. Fleming*, 781 P.2d 1384, 1389 (Colo. 1989) (concluding the defendant failed to prove that his guilty pleas were involuntary where, although the district court judge could not remember specifically advising the defendant regarding his guilty plea, "the record adequately reflect[ed] that [the judge] made a determination, in each case, as to whether a defendant's plea was voluntary"); *People v. Gandiaga*, 70 P.3d 523, 527 (Colo. App. 2002) (concluding the defendant did not meet his burden to establish ineffective assistance where, although his attorneys "could not specifically recall" discussing a particular option with him, "they felt certain they had done so*"); see also Hooks v. Workman*, 689 F.3d 1148, 1201 (10th Cir. 2012) (concluding defense counsel's decision not to subpoena a witness to testify did not constitute ineffective assistance where the "testimony would have been of limited utility").

Because the record supports the district court's findings, we will not disturb them. *See Dunlap*, 173 P.3d at 1063.

(Doc. 11-9 at 8-12.)

## 2. Discussion

Mr. Everett is not entitled to relief on his ineffective assistance of counsel claim under the "contrary to" clause of Section 2254(d)(1) because he does not identify any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.

Instead, Mr. Everett challenges the factual basis for the state appellate court's ruling that Mr. Everett's father was investigated, and that defense counsel's decision not to call Mr. Everett's father as a witness was based on a reasonable trial strategy. Although Mr. Everett disagrees with the appellate court's factual determinations, this Court must presume these findings are correct unless Mr. Everett rebuts the findings with clear and convincing evidence. Mr. Everett does not meet this standard, and the Court's review of the record supports the appellate court's decision.

Specifically, the record supports the determination that Mr. Everett's father was investigated, including evidence that counsel asked her investigator to interview Mr. Everett's father, and the investigator testified that he was "100% sure" he tried to contact all the witnesses counsel had asked him to contact. (State Court R., Trial Tr. 9/30/16 at 88-92, 95-99, 106-10; 1891-93, 200-10.) Mr. Everett's argument that there was no written record of the interview and that neither defense counsel nor the investigator specifically recalled interviewing Mr. Everett's father is insufficient. *See Sallahdin v. Mullin*, 380 F.3d 1242, 1248, 1251 (10th Cir. 2004) (explaining that evidence to overcome presumption of reasonable professional assistance was lacking where counsel could not remember why he did not call expert on steroid use because petitioner and not respondent bears the risk of counsel's faulty memory or ambiguous

testimony); *Hammon v. Miller*, 350 Fed. App'x 222, 227-28 (10th Cir. 2009) (rejecting deficient performance allegation where counsel did not specifically remember why he chose not to raise conflict issue on direct appeal or why he considered the issue meritless because petitioner bears brunt of counsel's faulty memory and ambiguous testimony given strong presumption of reasonable professional assistance and accompanying evidentiary burden).

Mr. Everett has therefore failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented under Section 2254(d)(2). In short, this claim does not survive the "doubly deferential" standard under Section 2254. *See Harmon*, 936 F.3d at 1058 ("When assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [federal courts] defer to the state court's determination that counsel's performance was not deficient and, further, to the attorney's decision in how to best represent a client.").

Claim 10 does not merit relief under Section 2254(d).

## C. Claim 11

### 1. State Court Proceedings

As to Mr. Everett's claim that counsel was ineffective in failing to request a jury instruction explaining that Mr. Everett was charged with one sexual assault under two alternative theories, the Court of Appeals rejected the claim because Mr. Everett failed to prove prejudice:

> First, during closing argument, the prosecutor specifically told the jury that it did not "charge two counts because [it] thought sex happened twice or sexual assault happened twice," explaining instead that "[i]t's two different theories, if you will, on the same sexual assault."

Second, the jury was instructed that the charges against defendant were not evidence and that, in determining defendant's guilt, defendant's sentence "should not enter into [its] consideration at any time." *See People v. Bass*, 155 P.3d 547, 552 (Colo. App. 2006) ("Absent a showing to the contrary, we must presume that the jury understood and followed the trial court's instructions.").

Third, by acquitting defendant of kidnapping, the jury demonstrated its ability to carefully weigh the evidence of each separate charge and to follow the instructions it was given. *See People v. Bondsteel*, 2015 COA 165, ¶ 53 (noting that where a defendant was acquitted of some charges but convicted of others, the "verdicts show that the jury was able to separate the facts and legal theories involved in each offense"), *aff'd*, 2019 CO 26.

Because we discern no prejudice resulting from the alleged instructional error in this case, we conclude trial counsel's failure to seek such an instruction does not constitute ineffective assistance of counsel. *See Osorio*, 170 P.3d at 800.

(Doc. 11-9 at 12-13.)

## 2. Discussion

Applying the deferential standards set out in Section 2254(d), the Court must conclude that the state appellate court's decision rejecting Mr. Everett's argument was not contrary to or an unreasonable application of *Strickland*.

In postconviction proceedings, the Colorado Court of Appeals assumed that counsel was deficient in failing to request a jury instruction based on *People v. Lowe*, 660 P.2d 1261, 1271 (Colo. 1983) (holding that jury should be informed that defendant was being charged with one crime under two alternative theories, and that verdict should indicate which theory had been proved by the evidence), but found that the lack of a *Lowe* instruction was not prejudicial to Mr. Everett. The Court of

Appeals concluded that the prosecution informed the jury that there was only one sex act; the jury was instructed that the charges against Mr. Everett were not evidence; and the jury had acquitted Mr. Everett on the kidnapping charge, which indicates the jury had in fact separated out the facts and legal theories for the separate charges. (Doc. 11-9 at 13.)

Mr. Everett has not persuaded the Court that the Court of Appeals was unreasonable in concluding that there was no prejudice based on the alleged instructional error. *See Littlejohn v. Royal*, 875 F.3d 548, 552 (10th Cir. 2017) (adopting similar approach—addressing only prejudice prong of *Strickland*—in disposing of petitioner's ineffective-assistance claim). Mr. Everett offers nothing more than his conclusory allegation that the "jury's verdict determined that instead of guilty or not guilty, there's too many sex assault theories, we are confused, let's convict on both. He must be guilty of something." (Doc. 22 at 59.) Conclusory allegations without supporting factual averments are insufficient to support a claim of ineffective assistance of counsel. *United States v. Fisher,* 38 F.3d 1144, 1147 (10th Cir. 1994).

Mr. Everett simply did not demonstrate a reasonable probability that, but for counsel's allegedly unprofessional errors, the outcome of the trial would have been different. The Court thus finds that this ineffective-assistance-of-counsel claim fails because the state appellate court's decision was not contrary to or an unreasonable application of established federal law, nor did it result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Claim 11 does not merit relief under Section 2254(d).

# XI.   Claim 12: Denial of Ineffective Assistance of Counsel Motion

Mr. Everett contends that the state courts erred in denying his post-conviction motion alleging ineffective assistance of trial and appellate counsel. (Doc. 1 at 10.) He challenges the postconviction court's conclusion that he did not satisfy the *Strickland* standard in establishing ineffective assistance of counsel as to his claims regarding counsel's failure to investigate his father and failure to seek a jury instruction on alternative theories. (Doc. 22 at 60-67.) He also challenges the postconviction court's conclusion that his appellate counsel's failure to raise the instructional error on direct appeal did not result in prejudice. (*Id.* at 64.)

The Court has addressed Mr. Everett's ineffective assistance of trial counsel claims above. With respect to Mr. Everett's ineffective assistance of appellate counsel claim, the Court finds that Mr. Everett does not establish he is entitled to habeas relief.

## A. State Court Proceedings

The Court of Appeals rejected Mr. Everett's claim that he received ineffective assistance of counsel because appellate counsel failed to raise the instructional error on direct appeal. The Court of Appeals reasoned:

> Likewise, we agree with the district court that defendant has not established prejudice resulting from appellate counsel's failure to raise instructional error on direct appeal. Defendant argues appellate counsel should have sought a new trial based on the holding in *Lowe*, because the jury was not instructed that only one offense was charged. However, the remedy provided by the supreme court in *Lowe* is precisely the remedy defendant received on direct appeal—that is, merger of the two convictions. *See* 660 P.2d at 1272 (vacating the defendant's two convictions and remanding to the district court to enter a conviction on a single offense).

Moreover, we have already determined that any instructional error did not result in prejudice in this case. Thus, defendant has not established a reasonable probability that, but for appellate counsel's failure to raise that error, the result of the proceeding would have been different. *See Hagos v. People*, 2012 CO 63, ¶ 13.

(Doc. 11-9 at 14-15.)

## B. Discussion

*Strickland* is the clearly established federal law applicable to an ineffective assistance of appellate counsel claim. *See Smith v. Robbins,* 528 U.S. 259, 285 (2000) (holding that "the proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*"). In the context of an ineffective assistance of appellate counsel claim, the prejudice prong of *Strickland* requires the defendant to "show reasonable probability that, but for his counsel's unreasonable failure to" raise a particular nonfrivolous issue, "he would have prevailed on his appeal." *Id.*

Mr. Everett fails to demonstrate that he is entitled to relief under the "contrary to" clause of Section 2254(d)(1). The state court identified the correct legal standard by applying *Strickland*, and Mr. Everett does not cite any contradictory governing law regarding ineffective assistance of counsel set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.

Further, the appellate court's decision denying Mr. Everett's ineffective assistance of appellate counsel claim comported with *Strickland*. Mr. Everett would not have prevailed on a claim challenging the jury instructions unless the error was prejudicial, and the Court of Appeals found that Mr. Everett was not prejudiced by any instructional error.

Mr. Everett's two convictions, moreover, were merged—one conviction was vacated and one conviction remained—which is the remedy established in *Lowe*. Mr. Everett has thus failed to demonstrate that a constitutional challenge to the jury instructions on direct appeal would have succeeded. *See Jackson v. Shanks*, 143 F.3d 1313, 1321 (10th Cir. 1998) ("Absent counsel's omission of an obvious winner on appeal, we are not inclined to second-guess appellate counsel's decision to eliminate arguable but weak claims." (citing *United States v. Cook*, 45 F.3d 388, 394-95 (10th Cir. 1995))); *see also Smith*, 528 U.S. at 288 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.")). Mr. Everett therefore cannot demonstrate that the state appellate court's resolution of his ineffective assistance of appellate counsel claim was an unreasonable application of federal law.

Accordingly, Mr. Everett is not entitled to relief for Claim 12.

## CONCLUSION

It is ORDERED that:

The Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. 1) is DENIED;

Mr. Everett's Motion for Appointment of Volunteer Counsel (Doc. 17) and Motion for Status of Case (Doc. 23) are DENIED AS MOOT; and

This case is DISMISSED WITH PREJUDICE.

It is FURTHER ORDERED that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED: June 24, 2021                    BY THE COURT:

_____
Hon. Daniel D. Domenico